UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAMON GUITY

                  Plaintiff,

vs.

THE CITY OF NEW YORK, ARNALDO RIVERA SHIELD #01922 individually and in his official capacity as Sergeant of the NEW YORK POLICE DEPARTMENT, STEPHEN MARTINEZ SHIELD #05568 individually and in his official capacity as a Detective for the NEW YORK POLICE DEPARTMENT, JENNIFER ROSARIO SHIELD #10604 individually and in her official capacity as a Police Officer for the NEW YORK POLICE DEPARTMENT,

                  Defendants.

---

Civil Action No.

**COMPLAINT FOR DAMAGES**

**JURY TRIAL DEMANDED**

By and through his attorney William O. Wagstaff III, plaintiff alleges upon knowledge, information and/or belief as follows:

**PRELIMINARY STATEMENT**

1.    This is a civil rights action in which the plaintiff RAMON GUITY is seeking relief for the violation by defendants of his rights, privileges, and immunities secured by the Fourth Amendment to the United States Constitution, New York State Constitution, and laws promulgated by the New York Legislature. This suit is being initiated under 42 U.S.C § 1983, which is the federal mechanism that allows constitutional tortfeasors acting under color of law to be sued in Federal Court.

2.    At approximately 5:00 pm on November 4, 2015, Mr. Guity was a passenger on the northbound 5 train heading to church for choir rehearsal. Mr. Guity was standing behind a female passenger and on the other side of the female passenger was another male passenger; he was a perfect stranger to Mr. Guity. When the train

arrived at the 125th Street Station, Mr. Guity was pulled off the train without reasonable suspicion or probable cause that he committed or was in the commission of a crime.

Sergeant Arnaldo Rivera Shield #01922 of the Transit Borough Manhattan Task Force questioned Mr. Guity without counsel on the platform, ostensibly about recent complaints of pickpocketing. Detective Stephen Martinez Shield #05568 of the Transit Borough Manhattan Task Force falsely arrested Mr. Guity as he answered Sgt. Rivera's questions (Arrest #M15682884). Mr. Guity was transported to the precinct and charged as a co-defendant with the stranger (whom he later learned is named Gerrado Cruz) with forcible touching and sexual abuse of the female passenger.

Police Officer Jennifer Rosario Shield #10604 also from the Transit Borough Manhattan Task Force filled out a Complaint Worksheet (Complaint #2015-25-07771) **(Exhibit 1)** at 7:30 pm containing the following statement from the complaining witness: **"And then a black man[1] was behind me but I didn't feel nothing"**. Despite Officer Rosario's 7:30 pm report, with information directly from the complaining witness, Officer Rosario swore under the penalty of perjury to a contradictory statement. Officer Rosario's 10:50 pm sworn Misdemeanor Complaint **(Exhibit 2)** falsely accuses Mr. Guity of rubbing his groin against the complaining witness' buttocks. Officer Rosario's false report initiated the prosecution of Mr. Guity. Mr. Guity was falsely imprisoned at 100 Centre Street for (18) eighteen hours until he was released on his own recognizance. Mr. Guity made multiple court appearances to defend this malicious prosecution, until his acquittal of all charges on March 24, 2017, after a trial.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because plaintiff alleges violations of the United States Constitution, 28 U.S.C. § 1343

---

[1] The black man she was referring to is plaintiff Ramon Guity.

because relief is sought for the deprivation of Plaintiffs' constitutional rights under color of State Law and 28 U.S.C. § 1367 based on supplemental jurisdiction.

4. Venue in the Southern District of New York is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred within the district.

## PARTIES

### Plaintiff

5. **Ramon Guity** is the kitchen manager for a Bryant Park restaurant called The Little Beet. He resides in Bronx County, New York

### Defendants

6. **The City of New York** is a municipal corporation duly incorporated and existing pursuant to the laws of the State of New York. The City has established and maintained a police department. The City is responsible for the illegal actions of its police department, police officials, the rank and file as well as units it creates unilaterally or through inter-municipal agreement.

7. **Sergeant Arnold Rivera Shield #01922**, at all times relevant to the facts of the Complaint, was employed by the City and acting under color of law. Sgt. Rivera's actions were malicious and intentional; accordingly, he is also being sued individually.

8. **Detective Stephen Martinez Shield #05668**, at all times relevant to the facts of the Complaint, was employed by the City and acting under color of law. Det. Martinez's actions were malicious and intentional; accordingly, he is also being sued individually.

9. **Officer Jennifer Rosario Shield #10604** at all times relevant to the facts of the Complaint, was employed by the City and acting under color of law. Officer

Rosario's actions were malicious and intentional; accordingly, she is also being sued individually.

## STATEMENT OF FACTS

10. On November 4, 2015, at approximately 5:00 pm Mr. Guity got on the northbound New York City #5 Train at the 14th Street station. He was heading to Misión de Dios Church located at 3685 Third Avenue, Bronx, New York. Mr. Guity was a musician at the church and scheduled to meet with members of the choir/band to rehearse for an upcoming service.

11. When the train arrived at the 125th Street station, Mr. Guity stepped off the train to allow other passengers to exit, and upon getting off the train, he was grabbed and detained by defendant Rivera, who was in plainclothes. Sgt. Rivera immediately showed Mr. Guity his badge; as a result, he cooperated with Sgt. Rivera's instructions.

12. Sgt. Rivera instructed Mr. Guity to stand against a wall on the platform, and at this time he realized that the young lady[2] standing in front of him on the train was asked to get off the train as well.

13. Sgt. Rivera claimed Mr. Guity was not in trouble; he just wanted to inquire about pickpocketing happening on the train because he heard about suspicion of a crime occurring. Mr. Guity responded that he was unaware of any pickpocketing, as for the duration of the time he was on the train he was looking up to avoid uncomfortable eye contact with other passengers because the train was crowded.

14. Within seconds of responding to Sgt. Rivera's question, Mr. Guity was placed in handcuffs by defendant Martinez without a word, explanation, or reason being given for his false arrest[3].

---

[2] At this time Mr. Guity did not know her name, but the young lady was Crisbel Ramirez Checo the complaining witness referenced *supra* who stated she did NOT feel Mr. Guity rub, touch or come into contact with her buttocks despite defendant Rosario's false report.

15. To no avail, the plaintiff pleaded with the defendants that he did nothing wrong and should not be arrested.

16. After being handcuffed Mr. Guity was escorted up the stairs to the mezzanine of the 125th Street station, where he was held awaiting a police car to take him back to the 14th Street station. During the thirty minutes, Mr. Guity was waiting in the mezzanine he first learned that he was being accused of doing some sexually inappropriate act to or towards the young lady in front of him on the train.

17. Appalled by the false allegation, Mr. Guity again pronounced his innocence, which went ignored. He was then taken by police car to the precinct in the Union Square train station.

18. Upon arrival at the precinct at Union Square, Mr. Guity was placed in a common jail cell with other prisoners where he was held for approximately four hours. From Union Square, he was transported to Central Booking at 100 Centre Street where his malicious prosecution was initiated. He remained in a common jail cell overnight until November 5, 2015.

19. Mr. Guity first spoke with counsel from the Legal Aid Society around 7:00 am, and the Judge based on counsel's application released Mr. Guity on his own recognizance after he spent approximately eighteen hours falsely imprisoned.

20. Mr. Guity was arraigned under Docket No. 2015NY071853 and charged with violating CPL § 130.52 Forcible Touching and CPL § 130.55 Sexual Abuse in the Third Degree.

21. From November 5, 2015, until March 24, 2017, Mr. Guity made close to 15 court appearances as a result of these false charges, at all times refusing to accept

---

[3] Setting aside momentarily the analysis of at which point Miranda was required to be read, it should be noted that he was never read his Miranda Rights.

any plea deal from the New York County District Attorney's Office, continuing to profess his innocence and demanding justice.

22. Refusing to accept a plea Mr. Guity went to trial and after almost a week-long trial[4] Mr. Guity was acquitted of all charges. See Certificate of Disposition, annexed hereto as **Exhibit 3**  Notably, despite being called as a witness for the prosecution Ms. Checco (the complaining witness identified *supra*) in her sworn testimony stated that Mr. Guity did not rub his groin against her, as he was falsely accused of doing. But it gets worse. She also testified that she told defendant Rosario this when interviewed to fill out the Complaint Report Worksheet **(Exhibit 1)**.

23. Despite being told by Ms. Checco that only the Latino man standing in front of her[5] rubbed against her, defendant Rosario filed a false accusatory instrument against Mr. Guity contradicting what Ms. Checco told her. But this too gets worse. Defendant Rosario testified at trial that she did not, in fact, observe Mr. Guity rub against Ms. Checco as reported in her false Misdemeanor Complaint but received the alleged information second hand from defendant Rivera. See 50-h Transcript at pg. 38 line 5 – pg. 39 line 16, annexed hereto as **Exhibit 4**

24. As a direct and proximate result of defendants' acts, plaintiff suffered violations of his civil rights, including loss of physical liberty, degradation, humiliation, loss of reputation, an employment opportunity with Chase as an Executive Chef based on their discovery of his arrest for the underlying action, various other emotional injuries and costs and expenses.

---

[4] The significance of an acquittal versus a dismissal on procedural grounds is critical to note because the question of probable cause was addressed which is fundamental to the analysis of false arrest, false imprisonment, and malicious prosecution.
[5] Mr. Guity was charged as a co-defendant to Gerrardo Cruz, the man standing in front of Ms. Checco on the train which she identified did rub his groin/penis against her.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**False Arrest in violation of the Fourth Amendment**

25. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

26. Defendants, at the time of the conduct, complained of herein, were all employees of the defendant City of New York and acted under color of law.

27. The defendants individually and as co-conspirators subjected plaintiff RAMON GUITY to false arrest without probable cause, reasonable suspicion, or legal justification, and of which plaintiff was aware and did not consent. As a direct and proximate result of the acts of the defendants individually and as co-conspirators, the plaintiff has been deprived of his rights under the Fourth Amendment to the United States Constitution and is entitled to compensatory damages, punitive damages, and attorney's fees for his injuries.

### SECOND CAUSE OF ACTION

**False imprisonment in violation of the Fourth Amendment**

28. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

29. Defendants, at the time of the conduct, complained of herein, were all employees of the defendant City of New York and acted under color of law.

30. Defendants individually and as co-conspirators caused plaintiff RAMON GUITY to be unlawfully imprisoned. As a direct and proximate result of the acts of the defendants individually and as co-conspirators, the plaintiff has been deprived of his

rights under the Fourth Amendment to the United States Constitution and is entitled to compensatory damages, punitive damages, and attorney's fees for his injuries.

### THIRD CAUSE OF ACTION

**Malicious Prosecution in violation of the Fourth Amendment and New York State Law**

31. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

32. Defendants, at the time of the conduct, complained of herein, were all employees of the defendant City of New York and acted under color of law.

33. Defendants individually and as co-conspirators caused plaintiff RAMON GUITY to be prosecuted without any probable cause until he was acquitted of all charges on March 24, 2017, after a trial. As a direct and proximate result of the acts of the defendants individually and as co-conspirators, the plaintiff has been deprived of his rights under the Fourth Amendment to the United States Constitution and is entitled to compensatory damages, punitive damages, and attorney's fees for his injuries.

### FOURTH CAUSE OF ACTION
### MONELL CLAIMS

34. Plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

35. An official policy can be created by regulation, ordinance, or handbook. More commonly under § 1983 suits "Municipal Policy" stems from customs and practices of the municipality that are evinced through repeated incidents of similar conduct

36. At the time material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had

de facto policies, practices, and customs which were a direct and proximate cause of the unconstitutional conduct alleged herein.

37.    *Monell v. New York City Department of Social Services* established the principle that the government is liable for actions taken pursuant to an official municipal policy that cause plaintiffs to be injured.

38. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, and customs of failing to properly train, screen, supervise, or discipline employees and police officers, and failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants. These policies, practices, and customs were a direct and proximate cause of the unconstitutional conduct alleged herein.

39.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, and customs of encouraging and/or tacitly sanctioning widespread illegal and baseless stops, frisks, and arrests of, and the unlawful issuance of baseless summonses to individuals in the absence of reasonable suspicions or probable cause. The NYPD had and has in place a policy, practice, and custom of implementing a quota system, whereby police officers are expected to make a certain number of arrests and issue a certain number of summonses per month. This quota system exerts enormous pressure on police officers, and their supervisors, to make illegal stops, frisks, and arrests, and to illegally issue summonses. This has been documented by the NYPD 12 in their interview with NBC Investigative reporter Sarah Wallace, and further covered in a Sundance Film Festival Impact Award-winning documentary "Crime +

Punishment." These policies, practices, and customs were a direct and proximate cause of the unconstitutional conduct alleged herein.

40. Accordingly, under the dictates of Monell and its progeny, the CITY OF NEW YORK is liable for the deprivation of the rights afforded to plaintiffs RAMON GUITY under the Fourth Amendment to the United States Constitution.

## PUNITIVE DAMAGES

41. Plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

42. The acts of the individual defendants were willful, wanton, malicious and oppressive and were motivated solely by a desire to harm plaintiff without regard for his rights secured as an American citizens and were based on a lack of concern and ill-will towards the plaintiffs because they placed meeting their arrest quota of the recognition of his rights. Such acts, therefore, warrant an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment and relief against Defendants as follows:

   a. Award Compensatory Damages in an amount to be determined at trial;

   b. Award Punitive Damages in an amount to be determined at trial;

   c. Award costs and expenses of this action including attorneys' fees to Plaintiffs pursuant to 43 U.S.C. § 1988;

   d. Any such other and further relief as this Court may deem appropriate.

## A JURY TRIAL IS DEMANDED

DATED: White Plains, New York
November 4, 2018

LAW OFFICE OF WILLIAM O. WAGSTAFF III P.C.

By: _____
William O. Wagstaff III, Esq.
William@Wagstaff.Legal
75 South Broadway Suite 400
White Plains, New York 10601
Tel: 914-226-3300
Fax: 914-226-3301

*Counsel for Plaintiff*