UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAMON GUITY

                Plaintiff,

      - against -

CITY OF NEW YORK, STEPHEN
MARTINEZ, JENNIFER ROSARIO, and
ARNALDO RIVERA,

                Defendants.

**MEMORANDUM
OPINION & ORDER**

18 Civ. 10234 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Ramon Guity brings this Section 1983 action against the City of New York (the "City") and three New York City Police Department ("NYPD") officers – Sergeant Arnaldo Rivera, Detective Stephen Martinez, and Officer Jennifer Rosario (collectively, the "Officers") – alleging claims for false arrest, false imprisonment, and malicious prosecution in connection with a November 4, 2015 arrest. (Cmplt. (Dkt. No. 1) ¶¶ 25-33)  In addition to the Section 1983 claims against the Officers and a Monell claim against the City, the Complaint alleges a malicious prosecution claim under New York law against the Officers. (Id. ¶¶ 31-33)

        Defendants have moved for summary judgment on all of Plaintiff's claims, arguing that there was probable cause to arrest and prosecute Plaintiff. (Def. Sum. J. Br. (Dkt. No. 51) at 9, 18)

        The City is entitled to summary judgment on Plaintiff's Monell claim because – as Plaintiff concedes (see Pltf. Sum. J. Opp. Br. (Dkt. No. 54) at 2, 18-19) – he has not proffered evidence sufficient to create a material issue of fact as to this claim.

For the reasons stated below, Defendants' motion for summary judgment on Plaintiff's claims against the Officers will be granted in part and denied in part.

## BACKGROUND

### I.   FACTS[1]

#### A.   Events in the Subway Car

On November 4, 2015, between 4:30 and 5:00 p.m., Plaintiff boarded a northbound No. 5 subway train at the 14th Street Union Square station. (Pltf. R. 56.1 Stmt. (Dkt. No. 55) ¶¶ 41, 42)  One stop later – at the 42nd Street/Grand Central station – a 15-year-old girl ("C.R.C.") boarded the subway car in which Plaintiff was travelling. (Id. ¶ 45; Def. R. 56.1 Stmt. (Dkt. No. 52) ¶¶ 3-4; see also Def. Resp. to Pltf. R. 56.1 Stmt. (Dkt. No. 57) ¶ 45) Sergeant Rivera, Detective Martinez, and Officer Rosario boarded the same subway car at Grand Central at that time. (Def. R. 56.1 Stmt. (Dkt. No. 55) ¶¶ 7, 9-11)

The Officers were assigned to patrol the subway system and were trained to look for indications of criminal activity on the subway, such as "passengers standing unusually close to other passengers when there is space available, passengers standing very close to other passengers when there are indicators they are strangers (lack of eye contact and lack of

---

[1]  To the extent that this Court relies on facts drawn from a party's Local Rule 56.1 statement, it has done so because the opposing party has either not disputed those facts or has not done so with citations to admissible evidence. See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (citations omitted).  Where Plaintiff disputes Defendants' characterization of cited evidence, and has presented an evidentiary basis for doing so, the Court relies on Plaintiff's characterization of the evidence. See Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001) (the court must draw all rational factual inferences in non-movant's favor in deciding summary judgment motion).  Unless otherwise stated, the facts cited by the Court are undisputed.

conversation), [and] passengers who look uncomfortable or [appear to be] in a stressful situation due to the proximity of another passenger." (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 11)

While standing in the subway car, Plaintiff maintained a grip on a nearby pole for support. (Pltf. R. 56.1 Stmt. (Dkt. No. 55) ¶ 42)[2]

At some point after C.R.C. boarded the train, C.R.C. and Plaintiff had physical contact. (See, e.g., Def. R. 56.1 Stmt. (Dkt. No. 52) ¶¶ 16, 22; see also Pltf. R. 56.1 Stmt. (Dkt. No. 55) ¶¶ 50-51) The parties dispute the nature of this physical contact, who initiated it, and whether the physical contact was accidental or intentional and inappropriate.

While travelling in the subway car, Officer Rosario "observed as Plaintiff remained, unmoving, with the front of his body pressed up against C.R.C.'s buttocks as she tried 'multiple times to move, unsuccessful[ly].'" (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 26 (quoting Rosario Dep. (Dkt. No. 50-5) at 59, 76) (further citations omitted))

Plaintiff denies initiating any form of physical contact with C.R.C. (Pltf. R. 56.1 Stmt. (Dkt. No. 55) ¶¶ 50, 16-18) According to Plaintiff, C.R.C. "backed away from" the passenger in front of her and "[w]hen she moved back she touched [P]laintiff'[s] chest with her back." (Pltf. R. 56.1 Stmt. (Dkt. No. 55) ¶ 50)

Plaintiff was arrested and charged with forcible touching and sexual abuse. (Def. Sum. J. Ex. H, Arrest Rpt. (Dkt. No. 50-8); Def. Sum. J. Ex. I, Criminal Court Cmplt. (Dkt. No. 50-9) at 2) He later went to trial on the charges of attempted forcible touching and sexual abuse

---

[2] The page numbers of documents referenced in this Opinion – other than deposition and trial transcripts – correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system. Citations to deposition and trial transcripts are to the page numbers assigned by the court reporter, rather than to the page numbers designated by this District's ECF system.

3

in the third degree, in violation of New York Penal Law §§ 110, 130.52, and 130.55. (Pltf. Sum. J. Ex. 5, Guity Trial Tr. Pt. 1 (Dkt. No. 53-5) at 5)

At Plaintiff's state court trial, C.R.C. testified that between the No. 5 train's 59th Street and 86th Street subway stops another male passenger – "G.C." – who was standing "in front of [C.R.C.] [to] the side . . . pretty close to [her]" – "touched [her] with his penis on [her] legs." (Pltf. Sum. J. Ex. 6, Guity Trial Tr. Pt. 2 (Dkt. No. 53-6) 127, 129) C.R.C. "moved to the back," away from G.C., but G.C. "moved towards [her.]" (Id. at 127) While this was happening, Plaintiff was standing "behind [C.R.C.]" in the subway car. (Id. at 128) Accordingly, "when [C.R.C.] moved back, [Plaintiff] touched [her] with his chest in [her] back." (Id.) C.R.C. tried to "move[] to the other side. But there were too many people so [she] couldn't move." (Id. at 129)

Consistent with C.R.C.'s account, Plaintiff maintains that "[t]he subway [car] was very crowded, with people behind him, people leaning on the door, people sitting, people standing and 'people everywhere'" around him. (Pltf. R. 56.1 Stmt. (Dkt. No. 55) ¶ 43; Pltf. Sum. J. Ex. 1, Guity Dep. (Dkt. No. 53-1) at 67) Plaintiff states that throughout his time in the subway car he stood "with [his] hand out in front of [him] holding the pole and the woman [C.R.C.] facing away from [him] facing the pole." (Pltf. R. 56.1 Stmt. (Dkt. No. 55) ¶ 47; Guity Dep. (Dkt. No. 53-1) at 69-70) According to Plaintiff, as C.R.C. "backed away from [G.C.] and [G.C.] moved towards her . . . she touched [P]laintiff'[s] chest with her back." (Pltf. R. 56.1 Stmt. (Dkt. No. 55) ¶ 50)

Defendants offer a different account of what transpired in the subway car.

Sergeant Rivera testified that he observed Plaintiff "standing very close to a female [passenger]" who appeared visibly tense. (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 13, 17; see also Rivera Dep. (Dkt. No. 50-6) at 59) There was "body to body touching" between Plaintiff

4

and C.R.C. – specifically, "his chest against her" (Rivera Dep. (Dkt. No. 50-6) at 60) – even though the train was not "'jam-packed.'" (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 12; see also Rivera Dep. (Dkt. No. 50-6) at 58 ("[A]ll the seats were taken and there were some passengers standing but it wasn't jam-packed."))

Officer Rosario testified that she "saw [P]laintiff directly behind C.R.C, pressed up against her," with "no passengers behind [P]laintiff that would 'push or cause him to be pressed up against another person in that manner.'" (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶¶ 22-23 (quoting Rosario Dep. (Dkt. No. 50-5) at 58)) Rosario also observed Plaintiff press "[h]is pelvic area to [C.R.C.'s] buttocks." (Pltf. Sum. J. Ex. 6, Guity Trial Tr. Pt. 2 (Dkt. No. 50-6) at 115) Officer Rosario further observed C.R.C. – who appeared "'very uncomfortable, scared, and upset'" (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶¶ 24 (quoting Rosario Dep. (Dkt. No. 50-5) at 72)) – "turn around and look at Plaintiff," which "confirmed to Officer Rosario that C.R.C. was aware of [P]laintiff and [was] both fearful and uncomfortable by [his] close proximity." (Id. ¶¶ 24-25 (quoting Rosario Dep. (Dkt. No. 50-5) at 67-68, 72))

### B.    Plaintiff's Arrest and Prosecution

"At the 125th Street [subway] station, Officer Rosario non-verbally indicated to Sergeant Rivera and Detective Martinez to detain [P]laintiff." (Id. ¶ 27) Sergeant Rivera followed Plaintiff as he exited the train and detained him on the platform. (Id. ¶ 28) Meanwhile, Officer Rosario approached C.R.C., identified herself as a police officer, and asked C.R.C. to step off the train and speak with her. (Id. ¶ 29; Rosario Dep. (Dkt. No. 50-5) at 65)

Once outside the subway car, Officer Rosario "asked [C.R.C.] if anything awkward or strange happened during the train ride." (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 30; Rosario Dep. (Dkt. No. 50-5) at 65) C.R.C. said the following:

5

> So I was in the 5 train and it was a Mexican guy I think, he was in front of me. And his part were up so I feel it and I moved and he keeps touching me. And then a black man were behind me but I din't feel nothing but I was so scared.

(Pltf. Sum. J. Ex. 2, Witness Statement (Dkt. No. 53-2) at 3)

After Officer Rosario took C.R.C.'s statement, "Detective Martinez approached Sergeant Rivera, who had been detaining [] [P]laintiff, and said there was a complaint. Detective Martinez then placed [P]laintiff under arrest." (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 32) Plaintiff then, "unprompted and unasked . . . declared to Sergeant Rivera, in sum and substance, 'I was close to a girl, it's not like I had an erection!'" (Id. ¶ 33) Plaintiff states that he "[felt] that he was being profiled because he was black, [and] deduced what [D]efendant Rivera was thinking," and "told [Rivera] that the train was packed and the young woman was close to him, explaining that he didn't want to be in sufficient proximity to have an erection."[3] (Pltf. R. 56.1 Stmt. (Dkt. No. 55) ¶ 54)

---

[3] Defendants object to this assertion in Plaintiff's Rule 56.1 statement, arguing that it "improperly contains legal arguments" and is "wholly unsupported by anything in the record." (Def. Resp. to Pltf. R. 56.1 Stmt. (Dkt. No. 57) ¶ 54) According to Defendants, "Plaintiff never claimed to be racially profiled as an explanation for his statements to the police officers regarding his erection." (Id.)

Defendants' "legal argument" objection is overruled. Plaintiff is not making a legal argument in paragraph 54; he is instead attempting to explain his state of mind. And Defendants' claim that Plaintiff has never contended that he was racially profiled is incorrect. At deposition, Plaintiff testified extensively about his concern that he was being racially profiled:

> Q: What do you recall saying to Sergeant Rivera regarding having an erection?
> A: That the train was crowded and I didn't want to give that impression.
> Q: You did say something to Sergeant Rivera regarding being too close to a female and you didn't want to give her the impression that you were somehow going to have an erection by being close to her?
> . . . .
> A: Yes. To further explain, once I was stopped by the police officer I remembered the look that he gave me. The look was an uncomfortable look. It was a look with intent as I mentioned before. I know what I look like and I know where I was on the train. The context of it led me to try to assess what could be

The Officers took Plaintiff to the Union Square police precinct and then to Central Booking at 100 Centre Street in Manhattan. (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 34) "Officer Rosario signed the Criminal Court Complaint against [P]laintiff, stating under penalty of perjury, that she had observed [P]laintiff sexually abusing C.R.C., and that C.R.C. had not consented to [P]laintiff's touch." (Id. ¶ 35) On November 5, 2015, Plaintiff was arraigned on charges of forcible touching and sexual abuse in the third degree, in violation of New York Penal Law §§ 130.52 and 130.55, respectively, and released on his own recognizance. (Id. ¶¶ 36-37) Between November 5, 2015 and March 24, 2017, Plaintiff returned to state court for appearances related to these pending charges. (Id. ¶ 38)

The case went to trial, and on March 24, 2017 – after the People had rested – the trial judge dismissed the charge of sexual abuse in the third degree.[4] (See Pltf. Sum. J. Ex. 7, Guity Trial Tr. Pt. 3 (Dkt. No. 53-7) at 178-80) A jury later acquitted Guity of the remaining charge of attempted forcible touching. (See id. (Dkt. No. 53-7) at 72; see also Def. Sum. J. Ex. J,

---

one possible reason why this officer might have any slight impression that I need to be taken [in] for anything. I tried my best to be compliant by giving every possible detail to make sure he understood that. . . . As I mentioned before, I'm fortunate to be involved in a lot of different things and go very far places through different organizations and different projects that I worked on but I experienced the difference how people viewed me when I'm [the] only black person in the classroom or only black person in my job. At that moment, it was just another moment where I got the impression that that factor is allowing this opportunity to arise and I just want to deescalate it before any possible thought can go further and so that is why in my tendency of sometimes over explaining and speaking in so much detail that people listening may lose track of what I'm saying that I said what I said.

(Guity Dep. (Dkt. No. 53-1) at 78-79)

[4] The trial judge found that – "even [when considered] in a light most favorable to the People" – "[n]o prima facie case has been made out for defendant Guity as to the [charge of sexual abuse in the third degree]." (Pltf. Sum. J. Ex. 7, Guity Trial Tr. Pt. 3 (Dkt. No. 53-7) at 179-80)

People v. Guity, Certificate of Disposition (Dkt. No. 50-10) at 2; Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 39)

## II.     PROCEDURAL HISTORY

The Complaint was filed on November 4, 2018 (Cmplt. (Dkt. No. 1)), and pleads – as to the Officers – Section 1983 claims for false arrest, false imprisonment, and malicious prosecution, as well as a state law claim for malicious prosecution. (Id. ¶¶ 25-40)

On June 18, 2020, Defendants moved for summary judgment on all claims. (Def. Sum. J. Br. (Dkt. No. 51) at 24)  Plaintiff filed his opposition on September 10, 2020 (Pltf. Sum. J. Opp. (Dkt. No. 54) at 15), and Defendants filed their reply on September 24, 2020.  (Def. Sum. J. Reply Br. (Dkt. No. 57) at 12)

## DISCUSSION

## I.     SUMMARY JUDGMENT STANDARD

Summary judgment is warranted where the moving party shows that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Fed. Trade Comm'n v. Moses, 913 F.3d 297, 305 (2d Cir. 2019). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)). "[W]here the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." XL Specialty Ins. Co. v. Prestige Fragrances, Inc., 420 F. Supp. 3d 172, 187 (S.D.N.Y. 2019) (internal citations and quotation marks omitted).

In deciding a summary judgment motion, the Court "'resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing

8

[the motion].'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001)). However, "'[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.'" Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1991)).

## II.    ELEMENTS OF A SECTION 1983 CLAIM

"'Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right . . . secured by the Constitution or the laws of the United States.'" Israel v. City of New York, No. 16 CIV. 6809 (PGG), 2018 WL 11219076, at *4 (S.D.N.Y. Sept. 29, 2018) (quoting Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citing 42 U.S.C. § 1983; Day v. Morgenthau, 909 F.2d 75, 77 (2d Cir. 1990))). "To state a claim under Section 1983, a plaintiff must show: '(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; [and] (4) damages.'" Rahman v. Fisher, 607 F. Supp. 2d 580, 584 (S.D.N.Y. 2009) (quoting Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes, 13 F.3d at 519 (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985)). "In order to prevail on a [S]ection 1983 claim, the plaintiff must show that the defendant's conduct deprived him of a federal right." Id. (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Rand v. Perales, 737 F.2d 257, 260 (2d Cir. 1984)).

## III.   FALSE ARREST AND FALSE IMPRISONMENT

According to the Complaint, on November 4, 2015, "[t]he [D]efendants individually and as co-conspirators subjected [P]laintiff RAMON GUITY to false arrest without

9

probable cause, reasonable suspicion, or legal justification," and "caused [P]laintiff RAMON

GUITY to be unlawfully imprisoned." (Cmplt. (Dkt. No. 1)  ¶¶ 27, 30 (emphasis in original))

### A.   Legal Standards

#### 1.   Elements of False Arrest and False Imprisonment

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an

individual to be free from unreasonable seizures, including arrest without probable cause, is

substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101

F.3d 845, 852 (2d Cir. 1996) (first citing Lennon v. Miller, 66 F.3d 416, 423 (2d Cir. 1995); and

then Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995); Hygh v. Jacobs, 961 F.2d

359, 366 (2d Cir. 1992); Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991)) (internal citation

omitted); see also Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) ("A section 1983

claim for false arrest is substantially the same as a claim for false arrest under New York law." ).

"[T]he common law tort of false arrest is a species of false imprisonment," and,

"under New York law, the elements of a false imprisonment claim are:  (1) the defendant

intended to confine [plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff

did not consent to the confinement and (4) the confinement was not otherwise privileged." Id.

(quoting Singer, 63 F.3d at 118) (further internal quotations omitted).

#### 2.   Probable Cause as a Defense to a
#### False Arrest/False Imprisonment Claim

Probable cause is a complete defense to a false arrest/false imprisonment claim.

Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014) (first citing Singer, 63 F.3d at 118; then citing

Zanghi v. Vill. Of Old Brookville, 752 F.2d 42, 45 (2d Cir. 1985)).

"'[P]robable cause to arrest exists when the officers have knowledge or

reasonably trustworthy information of facts and circumstances that are sufficient to warrant a

10

person of reasonable caution in the belief that the person to be arrested <u>has committed or is committing a crime.</u>'" <u>Gonzalez v. City of Schenectady</u>, 728 F.3d 149, 155 (2d Cir. 2013) (quoting <u>Weyant</u>, 101 F.3d at 852) (emphasis in original).

"[U]nder the 'collective knowledge doctrine,' all information known to one officer is imputed to all other officers involved in the same investigation." <u>Creighton v. City of New York</u>, No. 12 CIV. 7454 (PGG), 2017 WL 636415, at *25 (S.D.N.Y. Feb. 14, 2017). This doctrine "recognizes that, 'in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates.'" <u>Id</u>. (quoting <u>Zellner v. Summerlin</u>, 494 F.3d 344, 369 (2d Cir. 2007) (quoting <u>United States v. Valez</u>, 796 F.2d 24, 28 (2d Cir. 1986))). Accordingly,

> an arrest . . . is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation.

<u>Zellner</u>, 494 F.3d at 369 (quoting <u>United States v. Colon</u>, 250 F.3d 130, 135 (2d Cir. 2001)).

In determining whether the arresting officers had probable cause to arrest, "[t]he [Court's] inquiry is limited to 'whether the facts known by the [] officer[s] at the time of the arrest objectively provided probable cause to arrest.'" <u>Gonzalez v. City of Schenectady</u>, 728 F.3d 149, 155 (2d Cir. 2013) (quoting <u>Jaegly v. Couch</u>, 439 F.3d 149, 153 (2d Cir. 2006)). Courts must "look at the facts as the officers knew them in light of the specific elements of each crime," <u>id.</u>, and evaluate "the totality of the circumstances." <u>Stanbsurg v. Wertman</u>, 721 F.3d 84, 93 (2d Cir. 2013). "Review for probable cause should encompass 'plainly exculpatory evidence' alongside inculpatory evidence to ensure the court has a full sense of the evidence that led the

11

officer to believe that there was probable cause to make an arrest." Id. (quoting Fabrikant v. French, 691 F.3d 193, 214 (2d Cir. 2012)) (further quotations omitted).

"While an officer need not have concrete proof of each element of a crime to establish probable cause for an arrest, probable cause means more than bare suspicion." Gonzalez, 728 F.3d at 155 (internal quotation marks and citations omitted). That said, "[o]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury." Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989). "Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." Id. Accordingly, "'[t]he fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause.'" Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (quoting United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985)).

### 3.    Qualified Immunity

"'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Cox v. Vill. of Pleasantville, 271 F. Supp. 3d 591, 612 (S.D.N.Y. 2017) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)) (internal quotation marks omitted). "Summary judgment may be granted on the 'basis of a qualified immunity defense premised on an assertion of objective reasonableness [where] the defendant shows that no reasonable jury, viewing the evidence in the light most favorable to the [p]laintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law.'" Id. at 612-13 (quoting O'Bert ex rel. Est. of O'Bert v. Vargo, 331 F.3d 29, 37 (2d Cir. 2003)).

12

"[I]f probable cause is determined not to have existed, an arresting officer is entitled to qualified immunity if there was arguable probable cause for the arrest, which exists when, 'either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Jin v. City of New York, 169 F.4th 373, 380-81 (2d Cir. 2026) (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)). "'Arguable' probable cause should not be misunderstood to mean "almost" probable cause.  The essential inquiry in determining whether qualified immunity is available to an officer accused of false arrest is whether it was objectively reasonable for the officer to conclude that probable cause existed." Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007).

"In the context of a false arrest claim, an arresting officer is entitled to qualified immunity, as a matter of law at the summary judgment stage, only 'if the undisputed facts and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met.'" Jin, 169 F.4th at 379-80 (quoting McClellan v. Smith, 439 F.3d 137, 147-28 (2d Cir. 2006)) (emphasis in original) (internal quotation marks and citation omitted).

### B.   Analysis

#### 1.   Elements of the Charges Against Plaintiff

Plaintiff was arrested for, and charged with, forcible touching, in violation of New York Penal Law § 130.52, and sexual abuse in the third degree, in violation of New York Penal Law § 130.55. (Def. R. 56.1 Stmt. ¶¶ 32, 36; Pltf. Sum. J Ex. 3 (Dkt. No. 53-3); Def. Sum. J. Ex. H, Criminal Court Cmplt. (Dkt. No. 50-9) at 2)

Penal Law § 130.52 provides that

> [a] person is guilty of forcible touching when such person intentionally, and for no legitimate purpose . . . subjects another person to sexual contact for the purpose of gratifying the actor's sexual desire and with intent to degrade or abuse such other person while such other person is a passenger on a bus, train, or subway car.

N.Y. Penal Law § 130.52.[5]

Penal Law § 130.55 provides that "[a] person is guilty of sexual abuse in the third degree when he or she subjects another person to sexual contact without the latter's consent." N.Y. Penal Law § 130.55.

Both the forcible touching and the sexual abuse offenses involve "subject[ing] another person to sexual contact." See N.Y. Penal Law §§ 130.52; 130.55. The New York Court of Appeals has held that the "term 'sexual contact' is defined as 'any touching of the sexual or other intimate parts of a person for the purpose of gratifying the sexual desire of either party. It includes the touching of the actor by the victim, as well as the touching of the victim by the actor, whether directly or through clothing, as well as the emission of ejaculate by the actor upon any part of the victim, clothed or unclothed.'" People v. Guaman, 22 N.Y.3d 678, 682-83 (2014) (quoting N.Y.P.L. § 130.00[3]) (emphasis omitted).

### 2.   Whether Defendants Have Established as a Matter of Law that there Was Probable Cause to Arrest Plaintiff

Defendants argue that they are entitled to summary judgment on Plaintiff's false arrest and false imprisonment claims because the Officers had probable cause to arrest Plaintiff for forcible touching and sexual abuse in the third degree. (Def. Sum. J. Br. (Dkt. No. 51) at 17)

---

[5]  Penal Law § 130.52 also provides for criminal liability where a defendant "intentionally, and for no legitimate purpose [] forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person, or for the purpose of gratifying the actor's sexual desire." N.Y. Penal Law § 130.52(1). Because Defendants do not rely on this theory of forcible touching in their briefing (see Def. Sum. J. Br. (Dkt. No. 51) at 17), the Court does not address it.

14

According to Defendants, the Officers "had a reasonable belief that [P]laintiff was committing a sex-related crime" based on their observations of "[P]laintiff standing unnecessarily close to [C.R.C.], the lack of communication and eye contact indicating that they were strangers, the bodily contact the front of [P]laintiff's body was making with the [C.R.C's] backside, and the fact that [P]laintiff mirrored [C.R.C.'s] movements to prevent her from breaking the physical contact." (Def. Sum. J. Br. (Dkt. No. 51) at 18-19) In seeking summary judgment, however, Defendants simply ignore evidence in the record that puts each of these assertions in dispute.

For example, Defendants argue that "Plaintiff's position in relation to the victim appeared unwarranted because the train car was 'not crowded'" (Def. Sum. J. Br. (Dkt. No. 51) at 15 (quoting Def. R. 56.1 Stmt. (Dkt. No. 52) ¶¶ 21-23)), citing Rosario and Rivera's testimony that the subway car was "'not crowded,'" that "there was 'space for everyone to be separate'" (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 21 (quoting Rosario Dep. (Dkt. No. 52) at 58-59)), and that the train "was not jam-packed." (Id. ¶ 12 (quoting Rivera Dep. (Dkt. No. 50-6) at 58))

But Plaintiff has testified that "[t]he subway was very crowded, with people behind him, people leaning on the door, people sitting, people standing and 'people everywhere'" around him. (Pltf. R. 56.1 Stmt. (Dkt. No. 55) ¶ 43; Guity Dep. (Dkt. No. 53-1) at 67) Plaintiff further testified that although he "realized that there was someone in front of [him] that was really close," because there was only one "pole that was accessible, [and he needed to grasp that pole for support[,] [he] didn't really have much space to move." (Pltf. Sum. J. Ex. 7, Guity Trial Tr. Pt. 3 (Dkt. No. 53-7) at 16) And C.R.C. similarly testified that "there were too many people so [she] couldn't move" from her position in the subway car. (Pltf. Sum. J. Ex. 6, Guity Trial Tr. Pt. 2 (Dkt. No. 53-6) at 129)

15

In sum, there are material issues of fact as to whether Plaintiff's physical contact with C.R.C. in the subway car was unavoidable.

There are also material issues of fact as to whether Plaintiff subjected C.R.C. to sexual contact.[6] While Officer Rosario testified that she observed Plaintiff "pressed up against [C.R.C.'s] rear," with "[h]is pelvis area against her buttocks," for "approximately two to three minutes" (Pltf. Sum. J. Ex. 5, Guity Trial Tr. Pt. 1 (Dkt. No. 53-5) at 18-19),[7] Plaintiff denies that he initiated any physical contact with C.R.C., much less sexual contact. (See Pltf. R. 56.1 Stmt. (Dkt. No. 55) ¶ 50 ("[w]hen [C.R.C.] moved back" from G.C. – who was pressing his erect penis into her thigh – "she touched [Plaintiff's] chest with her back"; ¶ 47 (Plaintiff "maintained [his] position" – with his grip on a subway pole – "throughout his ride"); ¶ 45 ("C.R.C. [] came and stood in front of him"); ¶ 50 (C.R.C. "backed away from [G.C.]"); see also Guity Dep. (Dkt. No. 50-2) at 13 ("Q: At any time while you were behind [C.R.C.] were you in contact with her in any way? A: No, ma'am.")) Moreover, in C.R.C.'s statement to Officer Rosario after the incident, and in her testimony at Plaintiff's trial, C.R.C. states that she "din't feel nothing" from Guity. (Pltf. Sum. J. Ex. 2, Witness Statement (Dkt. No. 53-2) at 3; Pltf. Sum. J. Ex. 6, Guity Trial Tr. Pt. 2 (Dkt. No. 53-6) at 135 (C.R.C. testifying that "when [she] moved [back], [and] he touched me with his chest" she "didn't feel" any physical contact with Plaintiff))

---

[6] As discussed above, the offenses for which Plaintiff was arrested and prosecuted require proof that the defendant "subjected another person to sexual contact." See N.Y. Penal Law §§ 130.52; 130.55. "Sexual contact" – as used in the relevant statutes – means "any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party." N.Y. Penal Law §§ 130.00[3]; 130.52; 130.55.

[7] Sergeant Rivera testified that he "observed [P]laintiff make bodily contact with C.R.C., with [P]laintiff's chest against [her] back" (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 16 (quoting Rivera Dep. (Dkt. No. 50-6) at 60), but Rivera did not observe any sexual contact. Indeed, Rivera testified that he could only see the head, neck, and back of Plaintiff and C.R.C. (Pltf. Sum. J. Ex. 7, Guity Trial Tr. Pt. 3 (Dkt. No. 53-7) at 151)

16

Acknowledging that Officer Rosario's account and the accounts of Plaintiff and C.R.C. differ, it is not this Court's role to resolve the factual dispute. "'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015) (quoting Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005)); see also Proctor v. LeClaire, 846 F.3d 597, 607-08 (2d Cir. 2017) (quoting Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010)) ("'In reviewing the evidence and the inferences that may reasonably be drawn [at summary judgment], [a district court] may not make credibility determinations or weigh the evidence.'") (further internal quotations omitted). Where, as here, a Section 1983 plaintiff disputes that the underlying offense occurred, and "there are conflicts in the record" surrounding the circumstances of the alleged offense, "[w]hether the officers had probable cause to arrest the plaintiff is a question of fact for the jury." See Khan v. City of New York, No. 19-CV-104 (JGK), 2022 WL 3100941, at *4 (S.D.N.Y. Aug. 4, 2022) (where Section 1983 plaintiff "disputes that he committed the alleged assault [and] that the alleged assault occurred at all," "[w]hether the officers had probable cause to arrest the plaintiff is a question of fact for the jury"); Hines v. City of Yonkers, No. 08 CIV. 3126 CM, 2011 WL 3055369, at *4 (S.D.N.Y. July 20, 2011) (where Section 1983 plaintiff "testified that he never had a gun to throw away" and "that the four officers who testify otherwise are lying," "his testimony raises a genuine issue of fact concerning both actual and arguable probable cause").

Viewing the evidence in the light most favorable to Plaintiff, a reasonable juror could reject as not credible Officer Rosario's testimony that she observed Plaintiff pressing his

17

groin into C.R.C.'s rear.[8]  And because Officer Rosario is the only witness who has asserted that

Plaintiff subjected C.R.C. to "sexual contact," a reasonable juror could further conclude that the

officers lacked probable cause to arrest Plaintiff for forcible touching and sexual abuse in the

third degree.[9]

"'[C]ontradictory testimony [] establishes a 'genuine' issue for trial if it 'lead[s] to

a different legal outcome.'" See Yi Fu Chen v. Spring Tailor, L.L.C., 14 Civ. 218 (PAE), 2015

WL 3953532, at *4 (S.D.N.Y. June 29, 2015) (quoting Krynski v. Chase, 707 F. Supp. 2d 318,

322 (E.D.N.Y. 2009)) (alterations in original).  Here, the record contains contradictory testimony

about the nature of the physical contact between Plaintiff and C.R.C. and the circumstances of

that physical contact, including how crowded the subway car was in which they were travelling.

The conflicting testimony "establishes [] 'genuine' issue[s] for trial," because the probable cause

---

[8]  Defendants argue that even if "the officers had seen [only the contact between the] plaintiff's
chest [and] the victim's back for that extended period of time, coupled with the victim's
'uncomfortable, scared, and upset demeanor' [], it was reasonable for the officers to assume that
the nature of plaintiff's physical contact was sexual." (Def. Sum. J. Reply Br. (Dkt. No. 56) at 7)
But if all the officers observed was contact between Plaintiff's chest and C.R.C.'s back, it would
not be reasonable for them to assume that sexual contact was taking place.  In any event, where –
as here – the factual circumstances surrounding the charged offenses are in dispute, whether a
Section 1983 defendant "acted reasonably under the circumstances in good faith," Colon v. City
of New York, 60 N.Y.2d 78, 82 (1983), presents a question of fact for the jury.

[9]  In arguing that they had probable cause to arrest Plaintiff, Defendants assert that Plaintiff said
– after his arrest – "'I was close to a girl, it's not like I had an erection!'" (Def. Sum. J. Br. (Dkt.
No. 51) at 18 (citing Def. R. 56.1 Statement (Dkt. No. 52) ¶ 33))  But Defendants cannot rely on
a statement that Plaintiff made after his arrest to argue that there was probable cause to arrest.
Gonzalez, 728 F.3d at 155 (probable cause analysis is "limited to 'whether the facts known by
the arresting officer at the time of the arrest objectively provided probable cause to arrest'")
(quoting Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006)); see also Panetta v. Crowley, 460
F.3d 388, 395 (2d Cir. 2006) (quoting Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002))
("'When determining whether probable cause exists courts must consider those facts available to
the officer at the time of the arrest and immediately before it.'") (emphasis in original); Seitz
v. DeQuarto, 777 F. Supp. 2d 492, 502 (S.D.N.Y. 2011) ("The focus is on the information an
officer possessed at the time of the arrest; events subsequent to [plaintiff's] arrest cannot inform
the reasonableness of the Investigators' conduct at the moment they arrested [plaintiff].").

determination rests on whether there was sexual contact between Plaintiff and C.R.C. and –

given the circumstances in the subway car – whether the officers reasonably could have viewed

the physical contact they observed to be intentional and sexual.[10] See id. For these reasons,

Defendants are not entitled to summary judgment on the ground that there was probable cause to

arrest Plaintiff.

### 3.    **Qualified Immunity**

Defendants argue that in the event this Court denies their summary judgment

motion premised on probable cause, "the officers are nevertheless entitled to qualified

immunity." (Def. Sum. J. Br. (Dkt. No. 51) at 21)  Plaintiff responds that "the [O]fficer

[D]efendants simply made up the 'facts' supporting [P]laintiff's arrest," and therefore they are

not entitled to qualified immunity.  (Pltf. Sum. J. Br. (Dkt. No. 54) at 12)

---

[10] Defendants have not argued that Sergeant Rivera and Detective Martinez were entitled to rely on Officer Rosario's account of the physical contact between Plaintiff and C.R.C. "As a general matter, police officers are 'entitled to rely on the allegations of fellow police officers' in making a probable cause determination." McKinley v. Crevatas, No. 20 CIV. 3606 (KPF), 2023 WL 4364182, at *6 (S.D.N.Y. July 6, 2023) (quoting Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000)). "An officer may not, however, rely on another officer's statements when he harbors significant doubts about the credibility of those statements." Id. (citing Loria v. Gorman, 306 F.3d 1271, 103 (2d Cir. 2002)).

Here – even if Defendants had argued that Sergeant Rivera and Detective Martinez were entitled to rely on Officer Rosario's account – this Court could not resolve the issue as a matter of law. Both Sergeant Rivera and Detective Martinez were aware of the conditions in the subway car, and both were aware that C.R.C. had told Officer Rosario that she "[didn't] feel nothing" from Plaintiff. (See Rosario Dep. (Dkt. No. 50-5) at 71-72 (Officer Rosario's testimony that she "met up with [Sergeant] Rivera and Detective Martinez" and gave "the [S]ergeant the statement that the victim wrote," in which C.R.C. states that she "[didn't] feel nothing" from Plaintiff)) Indeed, at deposition, Officer Rosario testified that Sergeant Rivera had asked her at the time, "if [C.R.C.] told you she didn't feel anything, why do you want to arrest him?" (Rosario Dep. (Dkt. No. 50-3) at 78) Accordingly, whether Sergeant Rivera and Detective Martinez harbored "significant" doubts as to Officer Rosario's statements, and whether their reliance on her statements was reasonable under the circumstances, are questions for the jury.

19

"[A]n 'arresting officer is entitled to qualified immunity as a matter of law if the undisputed facts and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met.'" Bate v. City of New York, No. 15 CIV. 2631 (PGG), 2018 WL 4757940, at *24 (S.D.N.Y. Sept. 30, 2018) (quoting McClellan v. Smith, 439 F.3d 137, 147-48 (2d Cir. 2006)) (emphasis in original) (citations omitted). Here – as discussed above – there are genuine issues of material fact as to the conditions on the subway car and what transpired between Plaintiff and C.R.C. in that subway car. While Defendants say that Officer Rosario observed Plaintiff press his groin against C.R.C.'s buttocks, Plaintiff denies any such contact, and contends that any physical contact he had with C.R.C. was caused by the crowded conditions in the subway car in which they were travelling.[11]

---

[11] Defendants also argue that – "even under [P]laintiff's version of events" – "where [P]laintiff was standing close to the victim, making bodily contact with her by pressing into her back, causing her to be scared and uncomfortable – it would be objectively reasonable for the officers to believe that they had authority to arrest Plaintiff," or "[a]t the very least, competent officers could reasonably disagree as to whether by pressing his body against a girl he did not know on the subway[] [P]laintiff engaged in Forcible Touching or Sexual Assault in the Third Degree." (Def. Sum. J. Reply Br. (Dkt. No. 56) at 9)  The Court disagrees.  Under Plaintiff's version of events, no "sexual contact" – defined under New York law as "any touching of the sexual or other intimate parts of a person" – occurred.  See N.Y. Penal Law § 130.00[3].

Defendants cite no case law suggesting that probable cause exists under Section 130.52(2) and Section 130.55 absent evidence of physical contact involving "the sexual or other intimate parts of a person."  Indeed, the forcible touching and sexual abuse cases cited by Defendants all involve sexual contact.  (See Def. Sum. J. Br. (Dkt. No. 51) at 17-18 (citing People v. Cassis, 2017 NY Slip Op 27302, 57 Musc.3d 785, 64 N.Y.S.3d 473 (Crim. Ct., 2017) (affirming sexual abuse in the third degree conviction where the "defendant made contact with a female's buttocks with his groin area on the 5 train . . . [and the] officer also testified that the female glanced at the defendant disgustedly and looked uncomfortable"); People v. Ross, 2016 NY Slip Op 50241(U), 50 Misc. 3d 1223(A), 36 N.Y.S.3d 49 (Crim. Ct., 2016) (upholding complaint charging forcible touching, sexual abuse in the third degree, and public lewdness where officer observed defendant stand directly behind a female on a subway train and rub his groin against her buttocks.); People v. Sandoval, 2009 NY Slip Op 52683(U), 906 N.Y.S.2d 782 (Crim. Ct., 2009) (denying motion to dismiss forcible touching and sexual abuse in the third degree charges where officer observed

"Whether officers of reasonable competence could disagree on the existence of probable cause depends upon the material circumstances surrounding the arrest itself, which are in dispute." Trapp-Miley, 2012 WL 1068102, at *8. "Therefore, summary judgment on qualified immunity under these circumstances is inappropriate." Id.; see also Searles v. Pompilio, 652 F. Supp. 2d 432, 447 (S.D.N.Y. 2009) ("Because there are material issues of fact as to whether Pompilio had probable cause to arrest Searles, this Court cannot determine as a matter of law that Pompilio's actions were objectively reasonable. Accordingly, Pompilio is not entitled to summary judgment on grounds of qualified immunity."); Vitalone v. City of New York, No. 15-CV-8525 (JGK), 2018 WL 1587591, at *6 (S.D.N.Y. Mar. 27, 2018) ("Because there are issues of fact relating to the actions of the plaintiff and the officers at the time of the arrest, and these issues relate to the reasonableness of the officers' belief that there was probable cause to arrest, the motion for summary judgment on the basis of qualified immunity is also denied."); Kosmidis v. Port Auth. of New York & New Jersey, No. 18-CV-8413 (AJN), 2021 WL 4442812, at *4 (S.D.N.Y. Sept. 28, 2021) (denying summary judgment on qualified immunity grounds; "[i]f the factfinder ultimately credits [plaintiff's] version of the facts – in which the officers arrested [plaintiff] without prior provocation or warning – the jury may also conclude that there was no arguable probable cause") (emphasis in original).

---

defendant standing behind a woman on the subway, place his hands on the woman's buttocks and then press his groin area against her buttocks))

In sum, under the facts as alleged by Plaintiff, "'it is obvious that no reasonably competent officer would have concluded that' probable cause existed." Trapp-Miley v. City of New York, No. 09-CV-3933 KAM, 2012 WL 1068102, at *8 (E.D.N.Y. Jan. 17, 2012) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)), report and recommendation adopted as modified, No. 09-CV-3933 KAM RLM, 2012 WL 1068084 (E.D.N.Y. Mar. 29, 2012).

Moreover, there are material issues of fact as to whether the alleged evidence constituting probable cause was fabricated. If so, the officers' conduct could not be viewed as objectively reasonable. See Scotto v. Almenas, 143 F.3d 105, 113 (2d Cir. 1998) ("[I]t would be objectively unreasonable for Almenas to believe he had probable cause to arrest Scotto if Almenas himself fabricated the grounds for arrest."). Accordingly, Defendants are not entitled to summary judgment on qualified immunity grounds.

## IV.   **MALICIOUS PROSECUTION**

Defendants contend that they are entitled to summary judgment on Plaintiff's malicious prosecution claims against Defendants Rivera, Rosario, and Martinez under Section 1983 and New York law. (Def. Sum. J. Br. (Dkt. No. 51) at 24; see Cmplt. (Dkt. No. 1) ¶¶ 32-33)

### A.   **Legal Standard**

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" Id. at 161 (quoting Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997)) (further internal quotation marks and citations omitted).

As to the initiation or continuation of a criminal proceeding, "'"[i]n malicious prosecution cases against police officers, plaintiffs have met this first element . . . by showing that officers brought formal charges and had the person arraigned, or filled out complaining and

22

corroborating affidavits, or swore to and signed a felony complaint."''" Egan v. New York City,

No. 16 CIV. 1479 (PGG), 2018 WL 4926445, at *7 (S.D.N.Y. Oct. 10, 2018) (quoting

Cunninham v. New York City, 4 Civ. 10232 (LBS), 2007 WL 2743580, at *5 (S.D.N.Y. Sept.

18, 2007) (quoting Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372, 382-83

(S.D.N.Y. 2005))) (alterations and internal citations omitted in original). "'Additionally, a

defendant initiates a prosecution "by creating material, false information and forwarding that

information to a prosecutor or by withholding material information from a prosecutor."'" Id.

(quoting Aguirre v. City of New York, 15 Civ. 6043 (PKC), 2017 WL 4236552, at *9 (E.D.N.Y.

Sept. 22, 2017) (quoting Costello v. Milano, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014))).

As with false arrest and false imprisonment, probable cause is a complete defense

to a malicious prosecution claim. See Savino v. City of New York, 331 F.3d 63, 72 (2d Cir.

2003) ("[T]he existence of probable cause is a complete defense to a claim of malicious

prosecution in New York."). "The probable cause standard in the malicious prosecution context

is slightly higher than the standard for false arrest cases[, however]." Stansbury v. Wertman, 721

F.3d 84, 95 (2d Cir. 2013). "'Probable cause, in the context of malicious prosecution,

has . . . been described as such facts and circumstances as would lead a reasonably prudent

person to believe the plaintiff guilty.'" Id. (quoting Boyd v. City of New York, 336 F.3d 72, 76

(2d Cir. 2003)). "Further, '[w]here there is no change in the information known to police at the

time of arrest and prosecution, probable cause sufficient to warrant arrest precludes a claim for

malicious prosecution.'" Egan, 2018 WL 4926445, at *7 (quoting Cortes v. City of New York,

148 F. Supp. 3d 248, 255 (E.D.N.Y. 2015)).

23

**B.    Analysis**

Defendants contend that they are entitled to summary judgment on Plaintiff's malicious prosecution claims because (1) "[P]laintiff is unable to satisfy the first element of [a] malicious prosecution [claim], initiation of criminal proceedings, in relation to the actions of Sergeant Rivera and Detective Martinez" (Def. Sum. J. Br. (Dkt. No. 51) at 25); (2) the existence of probable cause bars Plaintiff's malicious prosecution claims as against Officer Rosario (id. at 26); and (3) there is no evidence of actual malice.  (Id. at 28)

Plaintiff contends that Defendants' motion should be denied as to Plaintiff's malicious prosecution claims, because the Officers "'create[d] false information likely to influence a jury's decision and forward[ed] that information to prosecutors.'"  (Pltf. Sum. J. Opp. Br. (Dkt. No. 54) at 13 (quoting Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 130 (2d Cir. 1997))

**1.    Initiation of a Criminal Proceeding**

Defendants contend that they are entitled to summary judgment on Plaintiff's malicious prosecution claims against Sergeant Rivera and Detective Martinez, because "only Officer Rosario can be said to have initiated the prosecution" of Plaintiff.  (Def. Sum. J. Br. (Dkt. No. 51) at 25)

Plaintiff responds that the initiation element is satisfied as to Sergeant Rivera and Detective Martinez because "'[a] plaintiff can satisfy the initiation requirement if he can establish that an indictment was procured by fraud, perjury, . . . or other police conduct undertaken in bad faith,'" and "[P]laintiff alleges all the [Officer] [D]efendants, almost certainly in concert with each other, acted in bad faith in causing [Plaintiff's] arrest."  (Pltf. Sum. J. Opp.

24

Br. (Dkt. No. 54) at 15-16 (quoting Dufort v. City of New York, 874 F.3d 338, 353 (2d Cir. 2017))

As an initial matter, Plaintiff's discussion of indictments obtained by fraud is irrelevant here, because there was no indictment. The forcible touching and sexual charges brought against Plaintiff are misdemeanors. (Def. Sum. J. Ex. H, Criminal Court Cmplt. (Dkt. No. 50-9) at 1-2); see also N.Y. Penal Law §§ 130.52 ("Forcible touching is a class A misdemeanor."), 130.55 ("Sexual abuse in the third degree is a class B misdemeanor."). Because Sergeant Rivera and Detective Martinez played no role in obtaining an indictment, this argument provides no basis for finding that they played a role in initiating the prosecution of Plaintiff.

To the extent that Plaintiff argues that Sergeant Rivera and Detective Martinez "acted in bad faith in causing [Plaintiff's] arrest" (Pltf. Sum. J. Opp. Br. (Dkt. No. 54) at 16), Plaintiff relies on the following:

As to Sergeant Rivera, Plaintiff argues that he "claims to have seen events which did not occur as reflected by the statements of [P]laintiff and C.R.C." (Pltf. Sum. J. Opp. Br. (Dkt. No. 54) at 14-15) As to Detective Martinez, Plaintiff contends that

> it was defendant Martinez who announced there was a complainant when there was not. Also, according to Martinez, it was his and Rivera's observations . . . and the statement of C.R.C. . . . that prompted defendant Martinez to place plaintiff under arrest.

(Id. at 15 (citing Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 32) (internal citation omitted))

As discussed above, to satisfy the initiation element of a malicious prosecution claim, a plaintiff must offer evidence that the defendant "either commenced or continued a criminal proceeding against him." Bermudez v. City of New York, 790 F.3d 368, 376-77 (2d Cir. 2015) (citing Russo v. City of New York, 672 F.2d 1014, 1018 (2d Cir. 1982)). "While police officers do not generally 'commence or continue' criminal proceedings against

defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to [have] 'play[ed] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" Id. at 377 (quoting Manganiello v. City of New York, 612 F.3d 149, 163 (2d Cir. 2010)) (further internal quotations omitted).

For example, "[a]n officer initiates a prosecution '"by creating material, false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor."'" Egan, 2018 WL 4926445, at *7 (quoting Ying Li v. City of New York, 246 F. Supp. 3d 578. 605 (E.D.N.Y. 2017) (quoting Costello, 20 F. Supp. 3d at 415))); see also Israel, 2018 WL 11219076, at *7 ("[W]here false information is at issue, courts generally phrase this element as requiring that a defendant 'create' the false information that is forwarded to prosecutors.") (citing Aguirre, 2017 WL 4236552, at *9 ("[A] defendant initiates a criminal prosecution 'by creating material, false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor.'" (quoting Costello, 20 F. Supp. 3d at 415))).

While arguing that "[Sergeant] Rivera claims to have seen events which did not occur" (Pltf. Sum. J. Opp. Br. (Dkt. No. 54) at 15), Plaintiff has not offered evidence that he provided false information to prosecutors that led to the initiation of his prosecution. Plaintiff instead points to alleged misrepresentations in Sergeant Rivera's 2020 deposition in connection with the instant case.[12] But Sergeant Rivera's deposition testimony was given five years after the charges against Plaintiff's were initiated, and three years after Plaintiff had prevailed at his state

---

[12] For example, Plaintiff cites Sergeant Rivera's deposition testimony that he saw "C.R.C. taking steps 'forward and backward, as if to get away from [P]laintiff,' while [P]laintiff followed her movements in unison, maintaining 'body to body touching.'" (Pltf. Sum. J. Opp. Br. (Dkt. No. 54) at 15 (quoting Def. R. 56.1 Stmt. (Dkt. No. 52) ¶¶ 16-18 (quoting Rivera Dep. at 59-60))

court criminal trial. (See Rivera Dep. (Dkt. No. 50-6) at 1; Def. Sum. J. Ex. H, Criminal Court Cmplt. (Dkt. No. 50-9) at 2; Pltf. Sum. J. Ex. 7, Guity Trial Tr. Pt. 3 (Dkt. No. 53-7) at 72, 178-80; Def. Sum. J. Ex. 10, People v. Guity, Certificate of Disposition (Dkt. No. 50-10) at 2)

Plaintiff also contends that Sergeant Rivera gave false testimony at Plaintiff's criminal trial. (See Pltf. Sum. J. Opp. Br. (Dkt. No. 54) at 13) Plaintiff argues that – "[t]o bolster a claim that [P]laintiff was deliberately placing himself in proximity to C.R.C." – "[Sergeant] Rivera . . . claimed the train was far more sparsely occupied than [P]laintiff and C.R.C. report." (Id. (citing Pltf. R. 56.1 Stmt. (Dkt. No. 55) ¶¶ 43, 45-46, 53) (further citations omitted)) Sergeant Rivera testified that "there was [sic] quite a few people" on the train but that "[i]t wasn't as packed as rush hour can be sometimes, where no one can enter the train." (Pltf. Sum. J. Ex. 5, Guity Trial Tr. Pt. 1 (Dkt. No. 53-5) at 21; see also id. at 27-28 (Rivera trial testimony that the subway train was a "full train but it was not packed"))

While false testimony at trial may be probative of an officer's state of mind when criminal charges were initiated, a malicious prosecution claim cannot be predicated on trial testimony. De Lourdes Torres v. Jones, 26 N.Y.3d 742, 757 (2016) is instructive on this point.

In that case, plaintiff's malicious prosecution claim was premised on allegations that detectives conducting a murder investigation had pressured her to sign a statement – written by a detective – containing plaintiff's purported confession. The New York Court of Appeals concluded that "the evidence that the detectives falsified plaintiff's confession and provided the confession to the District Attorney's Office for use in the prosecution of plaintiff created a triable issue of fact on the commencement element of malicious prosecution," "[b]ecause it is undisputed that the detectives who participated in the creation of the confession also had it sent to the District Attorney's Office." Id. at 767 (emphasis added).

27

But the New York Court of Appeals rejected plaintiff's argument that her malicious prosecution claim could be premised on the detectives' allegedly false testimony at a suppression hearing and at trial. In so ruling, the Court of Appeals held that, "[a]s a matter of historically-rooted public policy, a witness cannot be liable for malicious prosecution based on his or her false testimony at a trial or pretrial proceeding." Id. at 769-70 (citing Rehberg v. Paulk, 566 U.S. 356, 375 (2012); Briscoe v. LaHue, 460 U.S. 325, 329-36 (1983)) (further citations omitted). While such false testimony "is relevant evidence that the officers had a malicious state of mind in creating and transmitting the falsified confession," it "may not serve as a separate act of commencement of continuation" for purposes of a malicious prosecution claim. Id. at 770. "The test [for viability] is 'whether the plaintiff can make out the elements of his [malicious prosecution] claim without resorting to the . . . testimony. If the claim exists independently of the . . . testimony, it is not 'based on' that testimony. . . . Conversely, if the claim requires the . . . testimony, the defendant enjoys absolute immunity.'" Id. at 770 (quoting Coggins v. Buonora, 776 F.3d 108, 113 (2d Cir. 2015)).

Here, there is no evidence that Sergeant Rivera informed prosecutors of "events which did not occur" (see Pltf. Sum. J. Opp. Br. (Dkt. No. 54) at 14-15) at any point before trial. Nor is there any evidence that Sergeant Rivera "transmi[tted] [false information] to the prosecutors in the first instance." De Lourdes Torres, 26 N.Y.3d at 769. "Given the strong public policy against liability based on testimony in judicial proceedings," Sergeant Rivera cannot "be subjected to potential liability for [his] testimony at [Plaintiff's trial]." Id. at 770.[13]

---

[13] Plaintiff mentions in passing that Sergeant Rivera "signed the arresting paperwork." (Pltf. Sum. J. Opp. Br. (Dkt. No. 54) at 14) The Court understands Plaintiff to be referring to the On Line Booking System Arrest Worksheet, which Sergeant Rivera signed as Officer Rosario's supervisor. (Pltf. Sum. J Ex. 3 (Dkt. No. 53-3) at 4) In this worksheet, Officer Rosario states

28

Accordingly, Defendants are entitled to summary judgment on Plaintiff's malicious prosecution claims against Sergeant Rivera.

As to Detective Martinez, Plaintiff contends that

it was defendant Martinez who announced there was a complainant when there was not. Also, according to Martinez, it was his and Rivera's observations . . . and the statement of C.R.C. . . . that prompted defendant Martinez to place plaintiff under arrest.

(Pltf. Sum. J. Opp. Br. (Dkt. No. 54) at 15 (citing Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 32) (internal citation omitted))

Plaintiff argues that Detective Martinez's statement referring to C.R.C. as a complainant satisfies the initiation element, because Detective Martinez characterized "the statement of C.R.C. [that she "'din't feel nothing'" from Plaintiff (see (Pltf. Sum. J. Ex. 2, Witness Statement (Dkt. No. 53-2) at 3)] as a complaint [even though] she reported [that] [P]laintiff did not touch her." (Pltf. Sum. J. Opp. Br. (Dkt. No. 54) at 15 (quoting Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 32 ("Detective Martinez approached Sergeant Rivera, who had been detaining the [P]laintiff, and said there was a complainant. Based on the officers' observations

---

that she observed Plaintiff "repeatedly pressed up against [the complaining victim's] buttocks." (Id.)

Plaintiff does not argue that Sergeant Rivera's approval of this worksheet provides a sufficient basis for Plaintiff's malicious prosecution claims against him, but even if Plaintiff had made this argument, it would not be persuasive.

As an initial matter, "merely approving a report containing false information is [not] sufficient to sustain a malicious prosecution claim." Israel, 2018 WL 11219076, at *7; see also Herrera-Amador, 2021 WL 3012583, at *18. Secondly, Plaintiff has not offered evidence that this worksheet was provided to prosecutors. Finally, Plaintiff has not offered evidence that Sergeant Rivera knew at the time that Officer Rosario had not observed Plaintiff "repeatedly pressed up against [the complaining victim's] buttocks." For all these reasons, Sergeant Rivera's approval of the online booking arrest worksheet does not provide a basis for Plaintiff's malicious prosecution claims against Rivera.

29

and C.R.C.'s complaint, Detective Martinez placed [P]laintiff under arrest and placed [P]laintiff in handcuffs.'"))

Plaintiff has, however, proffered no evidence that Detective Martinez's alleged false statement – that C.R.C. had made a complaint against Plaintiff – "played any role in the preparation of the criminal complaint, [was ever] forwarded . . . to the District Attorney's Office, or [was ever] communicated in any fashion [to] the District Attorney's Office." Israel, 2018 WL 11219076, at *7.

As discussed above, in order for the initiation element to be satisfied as to a particular officer, a plaintiff must show that that officer played "a role in either swearing out a complaint or creating false information that [he or she knew would] be passed on to a prosecutor." See id. at *6 (collecting cases); Cameron v. City of New York, 598 F.3d 50, 63 (2d Cir. 2010) ("Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments."); Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372, 383 (S.D.N.Y. 2005) ("In malicious prosecution cases against police officers, plaintiffs have met this first element by showing that officers brought formal charges and had the person arraigned, or filled out complaining and corroborating affidavits, or swore to and signed a felony complaint." (internal citations omitted)); Rutherford v. City of Mount Vernon, 698 F. Supp. 3d 574, 602-03 (S.D.N.Y. 2023) ("To satisfy the first element of a malicious prosecution claim against a police officer, the 'plaintiff must show that the officer brought formal charges and had the person arraigned, or filled out complaining and corroborating affidavits or swore to and signed a felony complaint.'" (quoting Israel, 2018 WL 11219076, at *6)).

For all these reasons, Detective Martinez's reference to C.R.C. as a "complainant" provides no basis for liability on Plaintiff's malicious prosecution claims.

30

Plaintiff further contends that Detective Martinez is liable on Plaintiff's malicious prosecution claims based on Paragraph 32 of Defendants' Rule 56.1 Statement, which states that, "[b]ased on the officers' observations and C.R.C.'s complaint, Detective Martinez placed [P]laintiff under arrest and in handcuffs." (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 32 (citing Guity Dep. (Dkt. No. 50-4) at 80-81; Rivera Dep. (Dkt. No. 50-6) at 71-73)) Only Sergeant Rivera and Officer Rosario claim to have observed Plaintiff's interaction with C.R.C. in the subway car, however (see Def. R. 56.1 Stmt. (Dkt. No. 52) ¶¶ 13-26), and there is no evidence that Detective Martinez made any such observations or claimed to have made any such observations. (Id.; see also Pltf. R. 56.1 Stmt. (Dkt. No. 55)) Accordingly, Plaintiff's argument that the prosecution against him was premised on Detective Martinez's "observations" in the subway car has no support in the record.

Plaintiff has not proffered evidence sufficient to demonstrate a material issue of fact as to his malicious prosecution claims against Detective Martinez. Accordingly, Defendants will be granted summary judgment on those claims.

### 2. Probable Cause

As discussed above, there are material issues of fact as to (1) the circumstances in the subway car in which Plaintiff and C.R.C. were travelling; and (2) the nature of the physical contact between Plaintiff and C.R.C. in the subway car. Accordingly, Defendants are not entitled to summary judgment on Plaintiff's malicious prosecution claims on the ground that there was probable cause to arrest and prosecute Plaintiff.

### 3. Actual Malice

According to Defendants, "[t]o survive summary judgment, a plaintiff [alleging malicious prosecution] must elicit evidence 'showing . . . some deliberate act punctuated with

31

awareness of "conscious falsity" to establish malice.'" (Def. Sum. J. Br. (Dkt. No. 51) at 28 (quoting Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 423 (S.D.N.Y. 2002) (internal citations omitted in original)) Defendants further argue that "nothing in the record . . . indicates actual malice on the part of Officer Rosario." (Id.)

Courts in this Circuit have ruled, however, that "'[o]nce an issue of fact exists with regard to the possible lack of probable cause, the element of malice becomes an issue of fact as well,' resulting in denial of summary judgment." Brink v. Muscente, No. 11 CIV. 4306 ER, 2013 WL 5366371, at *11 (S.D.N.Y. Sept. 25, 2013) (quoting Brandon v. City of New York, 705 F.Supp.2d 261, 274 (S.D.N.Y. 2010) (citing Ricciuti v. New York City Transit Auth., 124 F.3d 123, 131 (2d Cir. 1997) ("In the present case, as we have noted, a jury could find that probable cause for the charges against the plaintiffs was lacking, and that finding alone would support an inference of malice."))); see also Boyd v. City of New York, 336 F.3d 72, 78 (2d Cir. 2003) ("Once we find an issue of material fact as to probable cause, the element of malice also becomes an issue of material fact as well. A lack of probable cause generally creates an inference of malice. Summary judgment for the defendants cannot be granted on this element either.") (internal citation omitted); Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996) ("In most cases, the lack of probable cause – while not dispositive – tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.") (internal quotations omitted), as amended (May 21, 1996).

Consistent with this precedent, where courts in this District find that there is a material issue of fact as to probable cause, summary judgment premised on a lack of malice is routinely denied. See, e.g., Brink, 2013 WL 5366371, at *12-14; Douglas v. City of New York, 595 F. Supp. 2d 333, 342-43 (S.D.N.Y. 2009) ("The Second Circuit has held that where there is a

32

disputed issue of fact as to whether probable cause existed, summary judgment on the malice requirement is inappropriate."); Tabaei v. New York City Health & Hosps. Corp., No. 11 CIV. 2013 JSR, 2012 WL 5816882, at *7 (S.D.N.Y. Nov. 14, 2012); ("[O]nce there is an issue of material fact as to probable cause, 'the element of malice also becomes an issue of material fact as well. A lack of probable cause generally creates an inference of malice.'" (quoting Boyd, 336 F.3d at 78)); Williams v. Cablevision Sys. Corp., No. 83531, 2000 WL 218403, at *5 (S.D.N.Y. Feb. 24, 2000) ("Because there is a genuine issue of material fact as to probable cause for continuation of the prosecution and because the fourth element of a malicious prosecution claim is linked to the third element, summary judgment is denied to Detective Hinds on the malicious prosecution claim."); Chimurenga v. City of New York, 45 F. Supp. 2d 337, 344 (S.D.N.Y. 1999) ("Where, as here, there is a triable issue as to probable cause, there will almost always be a triable issue as to malice, since 'the existence of malice may be inferred from a finding that defendants lacked probable cause.' (quoting Rounseville v. Zahl, 13 F.3d 625, 631 (2d Cir. 1991)).

Accordingly, Defendants' motion for summary judgment as to Plaintiff's malicious prosecution claims against Officer Rosario will be denied.

33

34

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted as to Plaintiff's malicious prosecution claims against Sergeant Rivera and Detective Martinez, but is otherwise denied. The Clerk of Court is directed to terminate the pending motion (Dkt. No. 49).

This case will proceed to trial at 9:30 a.m. on **June 15, 2026**, in Courtroom 705 of the United States Courthouse, 40 Foley Square, New York, New York. The joint pretrial order, motions in limine, requested voir dire, and requests to charge are due on **June 1, 2026**. Responsive papers are due on **June 8, 2026**. The parties are directed to consult this Court's Individual Rules as to the contents of their pretrial filings.

Dated: New York, New York
May 19, 2026

SO ORDERED.

Paul G. Gardephe
United States District Judge

34